Carol WHITE, Plaintiff,

v.

AMERICAN MOTORS SALES CORP., Defendant.

Carol WHITE, Plaintiff,

v.

AMERICAN MOTORS CORP., Defendant.

Civ. A. Nos. 81–0015–A, 81–0098–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Nov. 16, 1982.

J. Colin Campbell, Independence, Va., J. Clarke Fischer, Winston-Salem, N.C., for plaintiff.

William W. Eskridge, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

On April 12, 1979, the plaintiff, Carol White, was operating a 1974 American Motors Gremlin automobile in Yadkin County, North Carolina. Ms. White's automobile was struck from the rear by an automobile driven by Jeffery Freund and owned by Allen Martin Casstevens. The Gremlin burst into flames upon impact and White was severely burned.

On September 17, 1980, in her lawyer's office in Independence, Virginia, Ms. White

executed an instrument releasing Freund and Casstevens from liability. The release also released:

> all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action on account of damage to property, bodily injuries or death, resulting, or to result, from an accident to my person which occurred on or about the 12th day of April, 1979, by reason of an auto accident on I–77 in Yadkin County, North Carolina and of all claims or demands whatsoever in law or equity, which I, my heirs, executors, administrators, or assigns can, shall or may have reason of any matter, cause or thing whatsoever prior to the date hereof. It is Understood and Agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected. (See Defendant's Exhibit A).

On January 19, 1981, Ms. White, a Virginia resident filed identical complaints in two separate suits against American Motor Sales Corporation and American Motors Corporation. The two actions are joined for the purposes of this opinion. Defendant American Motors Corporation is a corporation incorporated under the laws of the state of Maryland and has its principal office in a state other than Virginia. Defendant American Motors Sales Corporation is a corporation incorporated under the laws of Delaware and has its principal office in a state other than Virginia.

The Gremlin was manufactured and sold by the defendants and eventually sold to the plaintiff by Bullins Used Cars in Galax, Virginia, which defendants assert is not an agent or dealer of their corporations. The plaintiff bases her claim in both tort and contract. First, Ms. White alleges that the defendants negligently breached a duty to design and manufacture a fuel system in the Gremlin which would not unreasonably enhance the danger to its occupants in the event of a rear-end collision. Ms. White also alleges that the sale of the automobile was in violation of the defendants' warran-

ties of merchantability and fitness for a particular purpose and that the defects in the automobile directly and proximately caused injuries suffered by Ms. White in the accident and the destruction of the automobile.

This cause is before the court on the defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendants base their motions on three theories: first, that the release signed by Ms. White absolves the defendants from alleged liability; second, that the defendants cannot be held liable for a breach of warranty because of a lack of privity of contract between Ms. White and the defendants; and third, that North Carolina does not recognize liability based upon the "crashworthiness doctrine."[1]

## I.

## MOTION FOR SUMMARY JUDGMENT BASED UPON THE RELEASE

### A. APPLICABLE LAW

■ Under the principles of the *Erie* doctrine, a federal court exercising diversity jurisdiction must apply the conflict of laws rules of the forum state. *Erie Railroad Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Kline v. Wheels by Kinney, Inc.,* 464 F.2d 184 (4th Cir.1972); Restatement (First) Conflict of Laws § 7 (1934).

■ It is generally held that the law of the place of the wrong determines the effect of a release. Annot., 66 Am.Jur.2d § 45 (1973); Annot., 69 A.L.R.2d 1034 (1960). The Virginia Supreme Court has not ruled on this question. Therefore, the Federal courts are under a duty to predict what the Virginia courts would do. *McClung v. Ford Motor Co.,* 472 F.2d 240 (4th Cir.1973). The issue was addressed by the United States District Court for the Eastern District of Virginia. *Preine v. Freeman,* 112 F.Supp. 257 (1953). In

*Preine,* a New York resident brought an action against residents of Virginia for injuries which resulted from an automobile accident in Virginia. A release was executed in Colorado. The court, after reviewing a number of cases from other jurisdictions, held that "the laws of that state which gave the plaintiff the cause of action also control in determining the effect of the releases. The fact that the release in Civil Action Number 1550 was actually executed in Colorado is immaterial since the law of the state giving the plaintiffs the right to sue determines the effect of the release." *Id.* at 260.

In addition to the *Preine* decision, the court is aware that Virginia relies on traditional conflict of laws rules and specifically rejects the Restatement (Second) of Conflicts of Laws "modern" approach to conflicts questions. *McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979). The "modern" approach, sometimes referred to as the "center of gravity" test, allows the court to apply the law of the state with the most significant relationship to the occurrence and parties. The Virginia Supreme Court rejected the modern approach and held that "in resolving conflicts of laws, the settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong." *Id.* 253 S.E.2d at 663.

■ Based upon the *Preine* decision and the Virginia Supreme Court's continued reliance on traditional rules on conflicts of laws question, this court finds that the law followed by Virginia at this time is that effect of a release will be determined by the place of the wrong, North Carolina.

### B. THE EFFECT OF THE RELEASE IN FULL ON THE DEFENDANTS' LIABILITY UNDER NORTH CAROLINA LAW

At the time that White executed the release, applicable North Carolina law provided:

---

1. This cause can be resolved on the basis of the first two claims; therefore, it is unnecessary to address the issue of whether a North Carolina

court would impose liability based upon the "crashworthiness doctrine."

When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death *unless its terms so provide;* but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or the amount of the consideration paid for it, whichever is the greater; and,

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

N.C.Gen.Stat. § 113–4 (1969) (Emphasis Added).

The language of the release that Ms. White signed released Freund and Casstevens "and all other persons, firms, or corporations from all claims . . . ." Ms. White argues that that statute operates to discharge from liability only those tort-feasors which are specifically named in the release. The North Carolina Court of Appeals has held to the contrary. *Battle v. Clanton,* 27 N.C.App. 616, 220 S.E.2d 97 (1975). The court applied the statute to a release which contained language very similar to the release executed by White.

The plaintiff in *Battle* was a passenger on a motorcycle which was involved in a collision with an automobile at an intersection. The insurer for the operator and the owner of the automobile settled with the plaintiff. The plaintiff executed a release which specifically named the insureds and

[a]ll other persons, firms, or corporations who are or might be liable, from all claims of any kind or character which I have or might have against it, him or them, and especially because of all damages, losses or injuries . . . [arising out of subject accident] and I hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I or my heirs, executors, administrators, successors or assigns may have against it, him or them by reason of the

above-mentioned damages, losses or injuries.

*Id.* at 220 S.E.2d at 99.

■ The North Carolina statute is a part of the Uniform Contribution Among Tortfeasors Act. The court, noting that uniform acts should be given uniform interpretation, held, in accord with other courts interpreting the statute, that a general release to whomsoever bars further suits against other entities involved in the occurrence which produced the settlement that led to the release. *Id.* at 220 S.E.2d 99. Although this court recognizes that other courts have refused to give effect to general boiler plate release, this court is bound to follow the North Carolina rule. A general release of all persons releases all tortfeasors even though each tortfeasor is not specifically named in the release. Therefore, under North Carolina law, when Ms. White signed the September 17, 1980 release which contained general language releasing "all persons, firms, or corporations from all claims," she released the defendants from liability. Ms. White counters, however, that this court should not uphold the release because of a mutual mistake as to the scope of the release.

## C. MUTUAL MISTAKE AS A DEFENSE

■ Ms. White, in affidavits she submitted in opposition to the defendants' motions, asserts that it was not her "intention" or the intention of her attorney or Freund's and Casstevens' insurance agent to release the defendants. Ms. White argues, therefore, that the release, because of the mutual mistake by the parties as to the scope of the release, is invalid. Again, this court must apply Virginia's conflicts of law rules to determine which state's law should be applied to the issue of the validity of the release in light of Ms. White's mutual mistake defense. The Virginia Supreme Court has held that the law of the place of the execution of the release governs the validity of the release. *Corbett v. Bonney,* 202 Va. 933, 121 S.E.2d 476, 479 (1961). *See also Johnson v. Barton,* 251 F.Supp. 474, 475 (W.D.Va.1966).

Ms. White does not allege that the defendants in this action sought to defraud her or misrepresent the scope of the release. She admits in her affidavit that she relied on the representations of her lawyer that she would not release the defendants from liability signing the release. Ms. White, as well as the other parties to the release, believed that the release would have no affect on White's claim against the defendants. In essence, Ms. White seeks to avoid the release based upon a mutual mistake of the legal effect of the release. The Virginia Supreme Court will not enforce a release entered into under a mistake of fact or fraud, however, the court affords no remedy for ignorance or mistake of law. See *Camp v. Camp,* 220 Va. 595, 260 S.E.2d 243 (1979); *Piedmont Trust Bank v. Aetna Casualty and Surety Company,* 210 Va. 396, 171 S.E.2d 264 (1969); *Seaboard Ice Company v. Lee,* 199 Va. 243, 99 S.E.2d 721 (1957).

Accordingly, it is the holding of this court that Ms. White discharged the defendants from liability by signing the release and that the release is not invalid by reason of her ignorance of the legal effect of the release.

## II

## MOTION FOR SUMMARY JUDGMENT BASED UPON BREACH OF WARRANTY

Ms. White also alleges that the defendants are liable for breach of implied warranties of merchantability and fitness for a particular purpose. The defendant asserts a lack of privity of contract as a defense to liability based on implied warranties.

## A. APPLICABLE LAW

This court must apply Virginia's choice of laws rule pertaining to claims of breach of warranty which is stated in the Code of Virginia § 8.1–105(1) (1975):

> Except as provided in this section, when a transaction bears a reasonable relation to this State and also to another state or Nations, the parties may agree that the law of either this State or of such other state or nation shall govern their rights and duties. Failing such agreement this act applies to transactions bearing an appropriate relation to this State.

No Virginia court decision construing this choice of law statute has been brought to the attention of the court, however, the Fourth Circuit has addressed this issue. *Bilancia v. General Motors Corp.,* 538 F.2d 621 (4th Cir.1976). In *Bilancia,* the Fourth Circuit, on the belief that the courts of Virginia would so conclude, held that "absent any agreement of the parties to the contrary, the law of the place of the accident has such 'an appropriate relation' to the transaction as to make the law of the place of the accident the controlling law." *Id.* at 623. The parties to this controversy have no agreement and the accident took place in North Carolina, therefore, the North Carolina law is applicable to the warranty issue.

## B. PRIVITY REQUIREMENT

The Uniform Commercial Code, which has been adopted by North Carolina, provides that unless expressly excluded by the seller, there is an implied warranty that the goods are of merchantable quality and in some instances, that the goods are fit for the particular purpose for which they are purchased. *See* N.C.Gen.Stat. §§ 25–2–314, 315 (1965).

The defendants argue that they are not liable to Ms. White on a breach of warranty claim because she purchased the Gremlin from a used car dealer who was not the defendants' agent or dealer. The defendants argue that there is no privity of contract between themselves and Ms. White, thus, they gave no implied warranties to Ms. White.

In 1979, the North Carolina legislature enacted a "Products Liability" statute. Section 99B–2(b) of that statute provides:

> A claimant who is a buyer is defined in the Uniform Commercial Code, of the product involved, or who is a member or a guest of a member of the family of the buyer, a guest of the buyer, or an em-

ployee of the buyer not covered by Worker's Compensation insurance may bring a product liability action directly against the manufacturer of the produce involved for the breach of implied warranty; and the lack of privity of contract shall not be grounds for the dismissal of such action. N.C.Gen.Stat. § 99B–2(b) (1981). Thus, by legislative action, North Carolina abolished the defense of lack of privity of contract in products liability cases.

As previously stated, the accident in question occurred on April 12, 1979; the suit against American Motors Sales Corporation was filed on January 19, 1981; and the suit against American Motors Corporation was filed on April 8, 1981. The issue now becomes whether N.C.Gen.Stat. § 99B–2(b), which abolishes the privity requirement, applies to breach of warranty claims which arose prior to its effective date, October 1, 1979. The defendants argue that Ms. White had no cause of action against the defendants on the date of the accident, April 12, 1979, because North Carolina required privity of contract at that time, and that § 99B–2(b) should not be applied retroactively because the effect would be to alter the substantive rights of the defendants.

The North Carolina courts have not ruled on this specific issue. However, the defendants rely upon a case in which this type of issue, concerning the retroactive application of a statute, arose. *Smith v. Mercer,* 276 N.C. 329, 172 S.E.2d 489 (1970). *Smith* involved a wrongful death action arising out of an automobile accident. Plaintiff's intestate was killed on March 16, 1968; on April 14, 1969 a new North Carolina wrongful death statute became effective; and on July 3, 1969 the action was instituted. One provision of the statute stated that it would not apply to litigation pending on its effective date.

The defendant made a motion to strike from the complaint allegations concerning certain damages which were not recoverable under the old wrongful death act in effect at the time of the accident. In ruling on this motion the Court recognized the

issue to be whether the new act should be applied retroactively when the death occurred prior to April 14, 1969, but no action was pending on that date.

The North Carolina Supreme Court ruled that the new wrongful death statute could not be applied retroactively because the effect would be to alter substantive rights. Chief Justice Bobbitt stated in the opinion:

> *Ordinarily, an intention to give a statute a retroactive operation will not be inferred. If it is doubtful whether the statute or amendment was intended to operate retrospectively, the doubt should be resolved against such operation.* It is especially true that the statute or amendment will be regarded as operating prospectively only, where it is in derogation of a common-law right, or where the effect of giving it a retroactive operation would be to interfere with an existing contract, destroy a vested right, *or create a new liability in connection with a past transaction, invalidate a defense which was good when the statute was passed, or, in general, render the statute or amendment unconstitutional.* (citations omitted)
>
> A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, *or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already passed. Hence, remedial statutes, or statutes relating to remedies or modes of procedure,* which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against a retrospective operation of statutes. To the contrary, statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention.

*Smith v. Mercer,* 276 N.C. at 337, 338, 172 S.E.2d 489 (1970) (Emphasis added).

The issue concerning § 99B–2(b) is the same as that which involved the then new wrongful death statute in *Smith*. That is, whether § 99B–2(b) should apply retroactively since the accident occurred prior to the effective date of the statute, April 12, 1979, even though the suit was not filed until January 19, 1981. Section 99B does provide that it should not apply to litigation pending on its effective date.

Section 99B–2(b) fits the definition, enunciated in *Smith v. Mercer, supra,* of a retrospective law because it "takes away or impairs vested rights acquired under existing laws." At the time of the accident, the law of North Carolina required privity of contract between a plaintiff and defendant as a condition precedent to a breach of warranty claim. *See Terry v. Double Cola Bottling Company, Inc.,* 263 N.C. 1, 138 S.E.2d 753 (1964); *Perfecting Service Co. v. Product Development and Sales Co.,* 261 N.C. 660, 136 S.E.2d 56 (1964); *Murray v. Bensen Aircraft Corp.,* 259 N.C. 638, 131 S.E.2d 367 (1973).

The effect of a retrospective application of Section 99B–2(b) would be to create liability for the defendant where none existed at the time of the accident. The defendants' prestatute right to be free from warranty liability where no privity of contract existed would thus be impaired.

This issue was addressed by the United States District Court for the Western District of North Carolina. *Wilson v. Ford Motor Co.,* (U.P. ST–C–80–2) (W.D.N.C. 1980). In *Wilson,* the accident occurred prior to the effective date of § 99B–2(b) and the plaintiff filed suit subsequent to the effective date as in the present action. The court, relying on the reasoning in *Smith v. Mercer,* held that § 99B–2(b) is not retroactive and dismissed the plaintiff's breach of warranty claim against the manufacturer. The court stated:

> The general rule of construction when deciding such an issue is that where the effect of giving a statute retroactive effect would be to create a new liability in connection with a past event, or to invalidate a defense which was good when the

statute was passed, the statute will be considered as controlling prospectively only. *Smith v. Mercer, supra.* In this case both of these conditions are met. First application of Chapter 99B could create a possible new liability for the defendant in regard to the automobile accident of January 6, 1980. Second, the operation of Chapter 99B would invalidate Ford's defense of lack of privity of contract which was good when Chapter 99B was passed.

> Applying the foregoing principles, this Court holds that N.C.G.S. § 99B has no application to a claim for breach of implied warranties where the death of plaintiff's intestate occurred prior to October 1, 1979, the date Chapter 99B became effective.

*Id.* at 4–5.

■ This court agrees with the conclusion of the court in *Wilson* and likewise holds that North Carolina General Statute § 99B–2(b) does not bar the defense of lack of privity to a claim for breach of implied warranties where the accident occurred prior to the effective date of the statute.

■ The plaintiff bought the Gremlin prior to the effective date of the statute from a used car dealer who was not an agent or dealer of the defendants. Because of the lack of privity of contract, the defendants made no implied warranties to the plaintiff. Therefore, no liability for breach of warranty can be imposed upon the defendants.

Although the court is sympathetic to the extent of the injuries that Ms. White has suffered, the court concludes that Ms. White released the defendants from all liability upon subscribing to the release document. Further liability cannot be imposed upon the defendants for breach of warranty because of the lack of privity of contract between the parties. Accordingly, for the reasons set forth above, the defendants' motion for summary judgment is hereby granted.

The Clerk of this court is directed to send certified copies of this Memorandum Opinion to counsel of record.