**WELLMORE COAL COMPANY, Plaintiff,**

v.

**POWELL CONSTRUCTION CO., INC., et al, Defendants.**

**Civ. A. Nos. 81–0019–B, 83–0278–B.**

United States District Court, D. Virginia, Big Stone Gap Division.

Dec. 5, 1984.

George S. Coakley, Cleveland, Ohio, Henry Keuling-Stout, Norton, Va., for plaintiff.

Richard T. Sowell, Knoxville, Tenn., Jim H. Guynn, Roanoke, Va., Jackson S. White, Jr., Abingdon, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Civil Action No. 81–0019–B was originally filed on behalf of Wellmore Coal Company (hereinafter, Wellmore) against Powell Construction Company, Inc. (hereinafter, Powell) in the Circuit Court of Buchanan County, Virginia, and was removed to this court on grounds of diversity of citizenship on or about January 19, 1981. The original motion for judgment alleged that Wellmore and Powell had agreed upon a construction contract by which Powell would construct for Wellmore a certain coal preparation plant which included a refuse aerial tram system and that a malfunction of the aerial tram system constituted a breach of the construction contract's implied warranties, i.e., that the aerial tram would be constructed in a reasonably good and workmanlike manner and would be reasonably fit for the purposes for which it was intended. Powell filed a third party complaint against Interstate Equipment Corporation (hereinafter, Interstate) alleging that Interstate had constructed the aerial tram and that if Powell was liable to Wellmore for breach of warranty, Interstate was liable to Powell.

After considerable discovery had been taken, a motion for summary judgment was filed by Interstate on the third party complaint filed by Powell. While Interstate's motion for summary judgment was being considered by the court, Wellmore moved to amend its complaint and the court permitted the amendment whereby Interstate was made a party defendant rather than a third party defendant.

Count One of the amended complaint alleges that Powell, through the malfunction of the tram system, has breached implied warranties of merchantability and fitness for a particular purpose and is therefore indebted to Wellmore. Count Two alleges that Interstate expressly warranted that the equipment and materials supplied by it would be free from defect in design, material and workmanship and that Interstate is therefore liable to Wellmore on grounds of breach of express warranty. Count Three alleges that Interstate supplied and constructed an aerial tram system for Wellmore and that the subsequent malfunction constituted a breach of implied warranty of merchantability. Count Four alleges that Interstate breached an implied warranty of fitness for a particular purpose and is therefore liable to Wellmore. Count Five alleges that Interstate is liable to Wellmore because of negligent design and construction of the aerial tram system. Count Six alleges that Interstate negligently operated, maintained and serviced the aerial tram system resulting in the malfunction. On each of the grounds alleged, Wellmore claims as part of its damages the sums expended to provide alternate means of hauling the refuse from the preparation plant to the disposal area.

Civil Action Number 83–0278–B alleges basically the same causes of action as set forth in Civil Action Number 81–0019–B, but arises from a separate event and involves other damages. Also, this second suit alleges that both Powell and Interstate were negligent in designing, manufacturing, installing and maintaining the system. The cases were consolidated for purposes of discovery and after discovery had been completed and certain affidavits filed, each defendant filed a motion for summary judgment. Both Interstate and Powell con-

tend in their respective motions that they are not liable for anything beyond direct damages in either of the suits and that they are not liable for consequential or contingent damages.

## STATEMENT OF FACTS

A letter agreement was entered into on May 16, 1977, between United Coal Companies (hereinafter, United) and Powell to build a coal preparation plant to be known as Wellmore Number Eight in Big Rock, Virginia. The plaintiff in this suit is Wellmore; however, the defendants do not raise any question over the fact that the contract was entered into by United, yet the suit is brought in the name of Wellmore; therefore, the court considers the acts of one to be the acts of the other.

Powell agreed to build the coal preparation plant for a turn-key price of $9,683,-000. Sometime after May 16, 1977, Wellmore decided that it needed to incorporate an aerial refuse tram at Wellmore Plant Number Eight to dispose of the refuse from the plant instead of trucking the refuse to the disposal site. This required an alteration of the contract and, because Powell was not able to build such an aerial refuse tram, it had to seek an additional contractor. It is not disputed that Interstate was the only company in the United States capable of performing this task. Various meetings were held between Powell and Interstate and between Wellmore, Powell and Interstate.

On February 1, 1978, Interstate prepared and sent to Powell a proposal designated P–7800, the front page of which reads as follows:

POWELL CONSTRUCTION COMPANY

For

AERIAL TRAMWAY SYSTEM

At

WELLMORE #8
PREPARATION PLANT

BIG ROCK, VIRGINIA

P–7800 also contained a provision titled "LIABILITY AND GUARANTEE". On page thirteen (total of twenty pages) as part of this liability and guarantee statement, the following words are found: "The seller will not be responsible for or liable in any way for consequential damages or contingent liability." It is agreed that the February 1, 1978 document was never executed by Powell or Interstate. However, the identical language is contained in subsequent documents. It is undisputed that after the February 1, 1978 proposal, representatives of Powell and Wellmore met to discuss the proposal made by Interstate. On February 20, 1978, Interstate prepared a second proposal, titled P–7800A, and submitted it to Powell. The face sheet and guarantee provisions contained the same language as P–7800, and there was an addendum regarding "concrete quantities required" and a total price indicated of $2,854,000. It is agreed that P–7800A was never executed by either party.

It is also undisputed that after a meeting on February 21, 1978, at Interstate's offices in Pittsburgh, between representatives of Wellmore, Powell and Interstate, Interstate prepared its third proposal, titled P–7800B, dated February 22, 1978. The face sheet of this document, the liability and guarantee provisions and the summary sheet which contained the total price, remained the same as P–7800A. P–7800B was signed on February 22, 1978, by James F. Vogel, President of Interstate, who sent three bound copies of the proposal to Powell. Powell accepted the proposal on February 27, 1978. On March 2, 1978, Powell returned two signed copies of the Interstate proposal P–7800B to Interstate and on that same day, revised their May 16, 1977 specifications to Wellmore (or United), said specifications including the addition of the aerial refuse tram system to be supplied by Interstate. Powell was to receive from Wellmore a supervision and expedition fee of five percent (5%) of the contract price between Powell and Interstate.

The contract between Powell and Wellmore, dated May 16, 1977, contained a provision known as "Change Order Number

One," which had the effect of adding $295,-300 to the original contract of $9,683,000. On March 16, 1978, Powell sent to Wellmore a second change order, "Change Order Number Two." Change Order Number Two increased the total contract amount by $3,400,000, which included the addition of the aerial refuse tram to Wellmore Plant Number Eight. Revised specifications were attached to this document. On March 28, 1978, both Powell and Wellmore executed Change Order Number Two. Change Order Number Three, issued by Powell on June 5, 1978, was simply a credit memo of $3,000. Change Order Number Four increases the price for concrete by the sum of $126,500.

On June 6, 1978, another meeting was held in the offices of Interstate between representatives of Wellmore, Powell and Interstate, which resulted in the fourth and final proposal, P–7800C, dated that date.

This proposal contained a face sheet identical to the three previous proposals and the same liability and guarantee provisions contained in Proposals P–7800A and P–7800B. The basic change between P–7800B and P–7800C was that the latter created certain changes in the continuous tramway, including the elimination of a breakover tower. Also, there were certain changes in the technical provisions of the tramway and a new drawing, designated as P–7703–1, substituted for the previous drawing SK–7803. The price increased from $2,854,000 to $2,906,000.

The parties do not dispute that at the time Change Order Number Two was executed between Powell and Wellmore, Interstate's Proposal P–7800B contained a heading "Materials and Services by Purchaser," and when Change Order Number Two was executed by Powell and Wellmore, the "Materials and Services by Purchaser" provision was specifically "passed through" from Interstate to Powell to Wellmore. Powell and Interstate argue that Change Order Number Two passed on to Wellmore all of the contractual provisions of the Powell-Interstate agreement, including the guarantee clause with the qualification that

there would be no liability for consequential damages or contingent liability. Wellmore concedes in its brief that the "Materials and Services by Purchaser" provision in the Powell-Interstate contract was "passed through" to Wellmore through revised specification unit 88.00, dated March 2, 1978. However, Wellmore claims that the language of Change Order Number Two does not incorporate all of the other provisions of the Interstate-Powell agreement and that there is nothing in the language which would indicate that the guarantee clause was passed through from Interstate to Powell to Wellmore. Wellmore further contends that P–7800B and Change Order Number Two did not constitute the final agreement between the parties because the Powell-Interstate agreement was changed, as noted heretofore, in Proposal P–7800C and Change Orders Three and Four.

## CONTENTION OF THE PARTIES

Powell and Interstate contend that the Powell-Interstate contract was accepted in its entirety by Wellmore, by incorporation in the Powell-Wellmore agreement as Change Order Number Two. Change Order Number Two is in the form of a letter dated March 16, 1978, from James J. Powell, President of Powell Construction Company, to Clarence Viers, Executive Vice-President of United Coal Company, and contains the following language: "Refuse Aerial Tram System Unit 9.05 will be furnished as stated in Interstate Equipment Corporation proposal number P–7800B (revised February 22, 1978). A copy of this contract is enclosed herewith." This document was signed, as accepted, on March 28, 1978, by Powell Construction Company, Inc., by James J. Powell and by United Coal Companies by Clarence J. Viers.

It is further contended by Powell and Interstate that if the written agreement between the parties is ambiguous, the parol evidence is sufficient to cause summary judgment to be granted in their favor because Wellmore specifically agreed at the Pittsburgh meeting prior to the submission of P–7800B to be bound by the "liability

and guarantee" provisions of P–7800B. Furthermore, Powell and Interstate note that their testimony is specific in this regard and that Wellmore's representatives do not deny the events of the Pittsburgh meeting.

Interstate also argues that the law of Tennessee should apply in this case; that Wellmore is estopped to deny that it is bound by the agreement between Interstate and Powell; that Wellmore was a third party beneficiary of the Powell-Interstate agreement; that if they were not an actual party, they were a de facto party; and that if there was not a real contract between Wellmore and Interstate, there was an implied contract. On the other hand, Wellmore contends that Powell's Change Order Number Two is clear on its face and cannot be interpreted to mean that Wellmore was incorporating by reference the Powell-Interstate contract P–7800B. As a second argument, Wellmore contends that if there is any ambiguity in the language of Change Order Number Two, even if parol evidence is considered, Change Order Number Two was not the final agreement between the parties because P–7800B was succeeded by P–7800C and Change Order Number Two was superseded by Change Order Numbers Three and Four.

### THE OPINION OF THE COURT

The written contract between Wellmore and Powell consists of several written documents. The first of these is the original contract which is simply a letter dated May 16, 1977 setting forth Powell's agreement to build the coal preparation plant for the sum of $9,683,000. This written contract between Wellmore and Powell was modified by four change orders, the first of which simply added an amount of $295,300 to the contract and made certain minor changes. Change Order Number Two is significant because it increased the total amount by $3,400,000 which represented the contract price between Powell and Interstate for the aerial tramway. Change Order Number Three merely subtracted

$3,000 as a credit memo and is actually an insignificant document. Change Order Number Four represents a change in price for concrete. There is no written agreement between Wellmore and Interstate unless the Powell-Interstate agreement "passed through" to Wellmore in Change Order Number Two. The court is of the opinion that the parol evidence is such in dispute that summary judgment cannot be granted based upon it. The president of Wellmore and certain other officers have denied that it was their intention to adopt the Powell-Interstate agreement as part of the contract between Wellmore and Powell and if they had understood that this was the situation, they would never have agreed to the contract.

■ It is clear under Virginia law that when more than one document makes up a contract, those documents should be interpreted together, each one assisting and determining the meaning intended to be expressed by the others. *J.M. Turner & Co. v. Delaney*, 211 Va. 168, 176 S.E.2d 422 (1970). It is also well established in Virginia that if the contract is clear and unambiguous on its face, then parol evidence is not admissible to explain or contradict or to in any way vary the terms of the agreement between the parties. *W.D. Nelson & Co. v. Taylor Heights Development Corp.*, 207 Va. 386, 150 S.E.2d 142 (1966). Furthermore, the court is of the opinion that, as will be more fully explained, the rule of sales applies in this case and in the Uniform Commercial Code only two exceptions are permitted for the application of parol evidence: (1) to show a course of dealing or usage, and (2) to show consistent additional terms. Va.Code § 8.2–202. The parol evidence offered in this case does not involve either of these exceptions.

The parties are inconsistent in their arguments as to what law is applicable to this case. Interstate argues that Tennessee law applies based upon the language in the Interstate-Powell agreement, which states that the governing law should be "the purchaser's place of business." (P–7800B, at p. 17). Thus, Interstate says that Powell is

the purchaser and Powell's residence is Tennessee. This is inconsistent with Interstate's contention that the Powell-Interstate agreement is incorporated in the Powell-Wellmore contract which would make Wellmore the purchaser, and because Wellmore is a Virginia corporation, the law of Virginia would apply. On the other hand, Wellmore argues in its brief and cites the court to Virginia cases without giving any cogent reason as to why Virginia law should apply. By inference, it appears that Wellmore is conceding that the purchaser is Wellmore and thus Virginia law is applicable.

■ Another weakness in the argument of Interstate is its interpretation of the liability and guarantee agreement set forth in the Interstate-Powell contract. The heading on page 13 of P–7800B reads: "LIABILITY AND GUARANTEE." Interstate argues that since the words "in any way" appear in the disclaimer sentence, it applies to negligence as well as warranty. It is noted that this proposal was drawn up by Interstate and must be construed strictly against it because it is the one that insisted upon the language and it is the one that submitted it. In the sentence following the one which states "the seller will not be responsible for nor liable in any way for consequential damages [1] or contingent liability," the following words appear "It shall not apply to machinery, materials or parts not manufactured by the seller, or to machinery or parts which shall have been repaired or altered other than by the seller, ...." Therefore, the language itself shows that the disclaimer points to warranty only and not to negligence. Furthermore, contingent and consequential damages are not

generally associated with the law of negligence. They are terms applicable to and used in relation to the law of warranty and the U.C.C. In particular, they apply to the law of sales.[2] An argument is made to the effect that this is not a sale. However, Interstate treated it as a sale as did Wellmore and the language of the Powell-Interstate agreement is clearly one of sale. Interstate calls itself the "seller" and Powell, *for Wellmore*, is listed as the "buyer." Therefore, the warranties defined in the U.C.C. are applicable in this case. Negligence imports a duty of reasonable care for carrying out a particular duty and one is responsible for all damages proximately caused by the negligence in performing those duties. Therefore, the standard of damages is defined in negligence in one manner and in warranty another. The court finds that the law of Virginia applies in this case; thus, in construing the liability and guarantee provision of the Interstate-Powell agreement as between all the parties, it does not in any way limit the liability or defeat liability for negligence on the part of Interstate or Powell to Wellmore.

■ The court notes that in the Interstate-Powell agreement, Interstate is the "seller." On the other hand, the "real purchaser" is not so obvious. On page 1 of P–7800B, the purchaser is described as follows: "Powell Construction Company for the Wellmore Number Eight Preparation Plant, Wellmore Coal Company at Big Rock, Virginia." A reasonable interpretation of this language is that Powell purchased the equipment for Wellmore. The relationship, whether as an independent contractor or as agent for Wellmore Coal Company, is not clear from this document

---

**1.** Consequential damages are defined as follows: "Consequential damages resulting from a seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know." Va.Code § 8.2–715.

It is to be noted that this case does not involve a limitation of warranty, which is covered by Va.Code § 8.2–316. This case does involve a limitation of remedy, covered by Va.Code § 8.2–719, which specifically provides for a limitation of damages, which may be the "sole remedy."

This Section also provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. In this case, it is not argued that the exclusion is unconscionable.

**2.** There are two implied warranties in a sale in Virginia, as follows: (1) merchantability (Va. Code § 8.2–314) and (2) fitness for a particular purpose (Va.Code § 8.2–315). Various technical applications and ramifications of these need not be addressed in this opinion.

and can be ascertained by the action of the parties and a study of all relevant writings.[3] There is no question that under the arguments set forth by Wellmore in accordance with their brief that the duties to be performed by the purchaser in the Interstate-Powell agreement came to rest upon Wellmore.

Beginning on page 12 of the Interstate-Powell agreement, P–7800B, there is a list of items under a heading: *"MATERIALS AND SERVICES TO BE FURNISHED BY PURCHASER:"*. Thus, even though Powell is the construction company charged with constructing the overall preparation plant, there is no dispute that the duties to be performed by the purchaser fell upon Wellmore and Wellmore did in fact perform these contractual obligations. These materials and services can be summarized as follows: clearing the right-of-way, including the removal or relocation of all obstructions, providing a practical truck road to all erection sites, the building of all concrete foundations for the tramway system, the supplying of power, furnishing a control circuit, furnishing communication equipment as needed and desired, surveying and engineering services to provide the center line and to stake out the foundations, receiving, unloading and storing any equipment including the handling of preliminary shipments, and providing construction power at the terminal sites. Thus, it would seem that every practical thing that had to be done by the purchaser was done by Wellmore and this ultimately included the payment to Interstate for the tram and the percentage paid to Powell for supervising the building.[4] Therefore, the court is of the opinion that Wellmore was the actual purchaser.

Further, the court is of the opinion that when all of the written materials are considered as a whole, Wellmore must be considered the purchaser in fact. When the letter of March 16, 1978, written by Powell to Clarence Viers, Executive Vice-President of United Coal Companies, was accepted on behalf of United, the Interstate-Powell agreement was accepted in its entirety. If the Interstate-Powell agreement was not adopted in its entirety by Wellmore, then what portion of it was adopted? In other words, what was excluded? It is conceded by Wellmore that the materials and services to be performed by the purchaser were to be performed by Wellmore and the payment of the money was to be made by Wellmore. When the language is used that the refuse aerial tram system "will be furnished" as stated in Interstate Equipment Corporation's proposal number P–7800B and that "a copy of this is enclosed," the language used is not exclusive; it is inclusive. It was all submitted to Viers and was accepted by him. There are no exclusions. Therefore, the plain language of this agreement points to the fact that it was binding upon Wellmore as it was on the other parties.

Common sense dictates that Interstate could never be concerned about any claim of Powell for consequential damages, since Powell would never be the user. Therefore, no factual situation could be envisioned which would create liability for consequential damages to Powell from Interstate. Powell was not to be the user of the aerial tramway and therefore could never suffer any kind of contingent or consequential damages. On page 18 of the Interstate-Powell agreement, it provides that title to all materials which were delivered to the site where the work was being done

---

3. The court is of the opinion that it does not have to determine whether in this case Powell was acting as agent or contractor. Va.Code § 8.2–210 says that "a party may perform his duty through a delegate unless otherwise agreed...."

(2) "unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party...."

4. "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." Va.Code § 8.2–301. Thus in this case only Wellmore fits the U.C.C. description of the buyer; it accepted and paid. By the same reasoning, Powell does not fit the definition of the seller.

"shall be in the purchaser and title shall pass to the purchaser," but that the seller would be solely responsible for the loss and damage. There is nothing in the Powell agreement with Wellmore that Powell ever obtained title to any of these materials or to any of the work and materials as it was completed and compensated for. It went directly to Wellmore. The duty of Powell was only to supervise; therefore, Powell could not obtain ownership or title to materials as they were delivered to the site. On page 16 of the contract, it is provided that the purchaser is to furnish all personnel required for operating the system under the seller's instructions. There is nothing in the Powell agreement with Wellmore that Powell "is to furnish people who are to test and operate the system" provided by Interstate. Therefore, unless Wellmore is the purchaser, this provision would not make any sense. While it may be unclear as to what capacity Powell was acting for Wellmore, whether as an independent contractor or an agent, there is no question that the contract was made for Wellmore in the language as set forth in the agreement and since this was submitted to and approved by Wellmore, it knew it was accepting the contract made by Powell on its behalf with Interstate.

Since the court has found that Interstate may be liable for negligence, the motion for summary judgment on the issue of negligence on behalf of Interstate is denied. The court finds that Interstate has specifically made written warranties of its liability for direct damages and any motion for summary judgment on warranties insofar as direct damages is concerned is overruled; however, the court grants summary judgment to Interstate on the issue of consequential damages and contingent liability insofar as breach of warranty is concerned because they are specifically excluded by Interstate. Since Interstate is the seller in this case, it is the only one that can be liable for breach of warranties. Powell has made no warranties to Wellmore, either express or implied, therefore summary judgment is granted to Powell on all allegations against it for breach of warranty.

In Civil Action No. 81–0019–B, no claim is made against Powell for negligence; therefore, in said case, summary judgment is granted to Powell on all issues. In Civil Action No. 83–0278–B, negligence is alleged against Interstate and Powell; therefore, in said case, summary judgment is denied to both Powell and Interstate on the issue of negligence.

An Order will be entered in accordance with this opinion.