**ISLAND CREEK COAL COMPANY and Garden Creek Pocahontas Company, Plaintiffs,**

v.

**LAKE SHORE, INC., Defendant.**

Civ. A. No. 82–0349–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

May 27, 1986.

---

John L. Walker, Jr., Roanoke, Va., for plaintiffs.

William B. Poff and Michael F. Urbanski, Roanoke, Va., Larry B. Kirksey, Bristol, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiffs, Island Creek Coal Company (Island Creek) and Garden Creek Pocahontas Company (Garden Creek), instituted this action against defendant, Lake Shore, Inc. (Lake Shore), seeking damages for, *inter alia,* loss of income due to interruption of their mining business. The action arose over an accident at plaintiffs' Virginia Pocahontas No. 6 (VP–6) mine that allegedly involved a steel sheave shaft that plaintiffs had purchased from defendant. Plaintiffs base their claims against defendant on theories of negligence and breach of various express and implied warranties. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

In response to plaintiffs' claims, defendant filed a motion for partial summary judgment arguing that under the terms of the purchase agreement for the steel shaft plaintiffs did not have a right to recover lost profits. Following oral argument on the motion, this court entered an order, dated May 13, 1986, granting defendant partial summary judgment whereby plaintiffs are denied recovery for consequential and special damages. This memorandum opinion sets forth the reasons for the court's ruling.

## I.

### FACTUAL BACKGROUND FOR DEFENDANT'S MOTION

The following facts are not in dispute. On June 30, 1977, defendant submitted a quotation to plaintiff Island Creek propos-

ing to furnish it with certain mine shaft equipment for its VP–6 mine located in Buchanan County, Virginia. Among the items listed was the shaft that plaintiffs contend is the subject of this litigation. The quotation also included a provision making it "subject to terms and conditions hereon and on reverse side." Paragraph 10 of the "Terms and Conditions," contained on the reverse side of the quotation, provides as follows:

> 10. The rights and obligations of the Seller and Buyer under any order placed pursuant hereto shall be governed by the laws of the State of Michigan. This quotation is subject to change without notice and expires thirty (30) days from its date unless otherwise indicated or renewed. No waiver, modification or addition to any of the provisions on the face or reverse side hereof shall be binding unless made in writing by Seller. *In no event shall any claim for consequential . or special damages be made by either party.*

Defendant's Exhibit A at 2 (emphasis added).

Island Creek subsequently issued a "Capital Equipment Requisition" for a number of the items listed in defendant's quotation, including the subject shaft, followed by a purchase order to defendant for those items. The requisition, dated November 8, 1977 and naming defendant as vendor, contained signatures of approval by, among others, Island Creek's Vice President of Engineering, manager of Projects and Chief Project Engineer. The final page of the requisition contained the following notation: "As per terms and conditions of your Quotation No. 77122–02–118 to our Mr. Earl Boggs, dated June 30, 1977." (Court's Exhibit No. 1 at 6).[1] The purchase order, dated November 17, 1977, included the same notation.

These facts provided the basis for defendant's contention that plaintiffs were not entitled to recover consequential or special damages, and therefore lost profits, as excluded by the terms of the purchase agreement. The issues before the court when ruling on the matter were (1) whether, as a threshold consideration, the purchase order was validly executed; (2) whether the terms of the purchase agreement applied to plaintiff Garden Creek; and (3) whether defendant effectively excluded consequential and special damages as a remedial measure under the terms of the purchase agreement.

## II.

### ANALYSIS OF ISSUES

■ As to the validity of the purchase order, plaintiffs argued that former Island Creek purchasing supervisor Jim Mann, who signed the purchase order, spoke with no one at Lake Shore regarding the shaft in question and that he had no authority to negotiate such contractual provisions as warranties and remedies. Nevertheless, according to the deposition testimony of both Jim Mann and John Mosolgo, also a former purchasing supervisor for Island Creek, Mann had the authority to authorize the purchase of capital equipment following an approved capital equipment requisition. As pointed out above, the subject purchase order followed an authorized requisition for the equipment from defendant and incorporated an identical notation regarding terms and conditions. Thus, Mann's execution of the purchase order was within his authority, despite the fact that he may have been without authority to negotiate with Lake Shore over certain terms. Even if Mann had not had the authority to execute the purchase order, Island Creek could be found to have ratified the terms of the order upon having followed through with the purchase. *See, e.g., Planters Bank & Trust Co. v. Loe,* 193 Va. 411, 416–17, 69 S.E.2d 455, 458–59 (1952) (bank ratified agreement entered into by bank official); *see generally,* Annot., 3 AM Jur 2d Agency §§ 160–182.

---

1. Defendant submitted a copy of the requisition to the court during oral argument on defendant's partial summary judgment motion. Plaintiffs' counsel made no objection as to its authenticity.

██ Consequently, Lake Shore's quotation and Island Creek's purchase order established the contract of sale with the terms and conditions of the quotation, as the offer, expressly incorporated by reference in the purchase order, as the acceptance. *See Mead Corp. v. McNally-Pittsburg Mfg. Corp.*, 654 F.2d 1197, 1203 (6th Cir.1981) (seller's bid proposal constituted an offer that was accepted by buyer's issuance of a purchase order). But even if the purchase order constituted the offer or a counter-offer, the terms and conditions of the quotation would still be part of the purchase agreement as incorporated in the order. *See id.* at 1205.

██ The purchase agreement also provided that Michigan law would govern the rights and obligations of the parties to the agreement. Neither plaintiffs nor defendant contested the validity of that provision. In a diversity action, this court must apply Virginia's choice of law rules to determine which state's law is to apply. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941): *White v. American Motor Sales Corp.*, 550 F.Supp. 1287, 1289 (W.D.Va. 1982). Under the applicable Virginia statute, VA CODE § 8.1–105 (1965 added volume), the parties' choice of law will control provided that the transaction in which they have been engaged bears a reasonable relationship to the state chosen. The court found that the parties' transaction bore such a relationship to the State of Michigan based on, *inter alia*, the fact that Lake Shore was a Michigan corporation.

██ The court thus moved to the second issue, which involved plaintiffs' argument that Garden Creek was not bound by the terms of the purchase agreement because it was not an original party to the agreement. The court had to look no further than the allegations in plaintiffs' complaint to resolve this matter. In paragraph six of the complaint, plaintiffs state that in December, 1977, Island Creek transferred to Garden Creek an interest in the VP–6 mine and mine equipment, and agreed to act as Garden Creek's agent and manager in the operation of the mine. Having entered into such an arrangement, Garden Creek could not be heard to say that its interest in the subject equipment was not subject to the terms and conditions under which that equipment was purchased. The partial interest Garden Creek acquired in the subject mining equipment, which was then under executory contract with defendant, made Garden Creek an assignee to the contract; as such, Garden Creek could claim no greater rights and remedies under the contract than its assignor, Island Creek. *See, e.g.*, 3 S. Williston, Contracts, § 432 (3d ed. 1960). Furthermore, Garden Creek became additionally bound to the terms of the contract when Island Creek, acting as its agent, carried through with the purchase of the mining equipment from Lake Shore.

██ Plaintiffs', final arguments in opposition to the motion for partial summary judgment went to the effectiveness of the purchase agreement to exclude recovery for consequential and special damages on claims based on negligence and breach of implied warranties. One line of argument was that the damage limitation language, when read in conjunction with the other terms and conditions of the purchase agreement, simply demonstrated an attempt to limit liability for a delay in delivery of goods. Plaintiffs offered the deposition testimony of Jim Mann and John Mosolgo in support of their contention that such was the limited intention of the parties to the agreement.

As the subject contract was for the sale of goods, interpretation of the contract was governed by Article 2 of the Uniform Commercial Code. The Code's parole evidence rule, as provided in MICH. COMP. LAWS ANN. § 440.2202 (1967), states in pertinent part as follows:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contempora-

neous oral agreement but may be explained or supplemented:

(a) by course of dealing or usage of trade (section 1205) or by course of performance (section 2208).

■ After reviewing the terms and conditions of the contract at issue, the court concluded that the damage limitation clause could not be read to exclude consequential and special damages only as to incidences involving delivery. The operative language was stated in no such limited context, but provided to the contrary that "[i]n no event" would either party to the purchase agreement claim consequential or special damages. The fact that other terms and conditions in the contract dealt with the subject of delivery could not be read to alter the unambiguous and unconditional scope of the damage limitation provision. To have done so would have required a distortion of the plain meaning of that provision. As the court stated in *DeVries v. Brydges*, 57 Mich.App. 36, 41, 225 N.W.2d 195, 198 (1974), when addressing the general rules of contract construction:

Indeed, if the language of the entire contract is clear and unambiguous, there is no room for construction by the courts, and in such case, the language must be held to express the intention of the parties and the court need not search for meanings nor indulge in inferences as to the intention of the parties.

Thus, applying the provisions of section 2202, this court refused to consider the deposition testimony offered by plaintiffs to demonstrate that the parties had a different intention, i.e. that the limitation of damages regarded delivery of goods only, since such evidence contradicted the express terms of the contract. Furthermore, even had it not contradicted the terms of the contract, the deposition testimony would not have been permitted under subsection a of 2202 that allows contractual terms to be explained by course of dealing, usage of trade or course of performance, none of which the testimony addressed. *See* MICH. COMP. LAWS ANN. §§ 440.-1205 & 440.2208 (1967); *see also*, "Practice Commentary" to MICH. COMP. LAWS ANN. § 440.2202 (1967); *cf. Michigan Bean Co. v. Senn.*, 93 Mich.App. 440, 287 N.W.2d 257 (1979).

■ Plaintiffs' other line of argument regarding the effectiveness of the damage limitation clause was that the language used failed to adequately disclaim liability for either breach of implied warranties or negligence. As to implied warranties, plaintiffs pointed to § 440.2316(2) of the MICH. COMP. LAWS ANN., which provides that:

[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

Based on that provision, plaintiffs contended that the subject clause was ineffective as none of the requirements of subsection 2316(2) were met.

The argument failed, however, because the damage limitation clause was exactly that: a limitation on the damages available to either party and not a limitation/disclaimer on the duties created under the implied warranties. The provision governing the issue was MICH. COMP. LAWS ANN. § 440.2719, which provides in part as follows:

(1) Subject to the provisions of subsections (2) and (3) of this section ...

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

\* \* \* \* \* \*

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to

the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

As explained in the "Official U.C.C. Comment" to section 2719, "[u]nder this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." Neither the statute nor the official comment goes on to provide specific language that must be used in order to effectively exclude consequential damages as a remedial measure.[2] Nor did the court find any case law that so provided. Rather, the courts that have addressed the issue have either explicitly or impliedly recognized the clear distinction under the U.C.C. between effectuating a disclaimer or modification of warranties and a limitation of remedies or damages. *See Illinois Central Gulf Railroad Co. v. Pargas, Inc.,* 722 F.2d 253 (5th Cir. 1984); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.,* 709 F.2d 427 (6th Cir.1983); *Orrox Corp. v. Rexnord, Inc.,* 389 F.Supp. 441 (M.D.Ala. 1975); *Investors Premium Corp. v. Burroughs Corp.,* 389 F.Supp. 39 (D.S.C.1974); *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.,* 358 F.Supp. 449 (E.D.Mich.1972), where the court stated in dicta that:

> While there are no cases in Michigan expressly dealing with the limitation of consequential damages [under § 440.-2719], the Court feels that, under the circumstances of this case, the Michigan Courts would uphold the exclusion of consequential damages. See generally M.C.L.A. § 440.2719; *Mattson v. General Motors Corp.,* 9 Mich.App. 473, 157 N.W.2d 486 (1968).

Thus, having previously found that the parties' contract of sale expressly excluded consequential damages, the court concluded that the plaintiffs were denied recovery for such damages under their claim of breach of warranty. Consequently, plaintiffs would not be entitled to lost profits under their contract claim since lost profits are an element of consequential damages under Michigan law. *Uganski v. Little Giant Crane and Shovel, Inc.,* 35 Mich. App. 88, 192 N.W.2d 580 (1971).

▮ The court was also unpersuaded by plaintiffs' contention that the damage limitation clause failed because it did not effectively disclaim liability for negligence. Again, the clause was not a disclaimer on liability for negligence or breach of warranty, but rather a limitation on damages; the clause left plaintiffs free to seek, for example, direct damages under either theory of liability. The issue was whether, under Michigan law, parties in commercial transactions could contractually agree to limit damages in tort and, if so, whether special language was required to provide for such a limitation. The court thus did not find relevant plaintiffs' discussion of cases decided under Michigan law, *e.g*, *American Empire Ins. Co. v. Koenig Fuel & Supply Co.,* 113 Mich.App. 496, 317 N.W.2d 335 (1982), that addressed the problem of attempted contractual disclaimers of liability for negligence.

The defendant, on the other hand, presented to the court a number of cases addressing the issue of contractual limitations on damages in tort. Only one of those cases discussed the issue under Michigan law, and the court found no other such case in its own research. The case was *U.S. Fibres, Inc.,* 358 F.Supp. 449, 465 (E.D.Mich.1972), *aff'd,* 509 F.2d 1043 (6th Cir.1975), in which the court expressed in dicta, which was quoted above, that a contractual exclusion of consequential damages would be upheld under Michigan law on claims of both breach of warranty and negligence where, as there, the contract explicitly excluded recovery of consequential damages. The court went on to rule that the damage limitation clause was valid and enforceable as to both theories of lia-

---

**2.** Section 2719 does provide, as previously stated, that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. In this case, plaintiff did not argue that the exclusion was unconscionable.

bility under Pennsylvania law, which governed the action.

In other cases cited by defendant, courts consistently recognized that parties in relatively equal bargaining positions could contractually agree to limit damages on claims for negligence. In *Southwest Forest Indus., Inc. v. Westinghouse Elec. Corp.*, 422 F.2d 1013, 1020 (9th Cir.1970), for example, the Ninth Circuit explained that "[t]he general rule is to permit contracts limiting tort liability when they have been bargained between large corporate enterprises...." The court thereafter upheld the district court's finding that Westinghouse was not liable for consequential damages resulting from negligence as per a damage limitation clause excluding such damages. *Id.*

Similarly, in *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603 (7th Cir.1975), the Seventh Circuit rejected plaintiff's negligence claim for business interruption damages based on the following clause in defendant's proposal to plaintiff:

7. We shall have no liability for any special indirect or consequential damages arising from loss of production or other losses owing to failure of machinery or equipment.

*Id.* at 616. In reaching its decision, the court explained that it rejected plaintiff's argument that:

[T]he provision is inapplicable to negligence liability because it does not expressly refer either to 'negligence' or to 'fault.' We do not read the Illinois authorities as requiring such a specific reference in order to limit negligence liability.

*Id.* Citing U.C.C. § 2–719(3), the court went on to explain:

[I]n determining whether a limitation of negligence liability is effective, we do not believe the Illinois courts would require the same degree of specificity in commercial transactions that they might in a consumer context. We think that reasonable businessmen would read the provisions of the USM proposal as limiting liability for negligence.

*Id.* at 617. *See also Iowa Elec. Light & Power Co. v. Allis Chalmers Mfg. Co.*, 360 F.Supp. 25 (S.D.Iowa 1973) (where court applied in a negligence action a consequential damages exclusion clause virtually identical to the one contained in Lake Shore's quotation).

Where courts have refused to give effect in a negligence action to a contractual limitation on consequential damages, they have generally done so because the damage limitation clause, itself, or the context in which it was provided placed an express or implied restriction on the scope of the damage limitation. In *Boone Valley Coop. Proc. Ass'n v. French Oil Mill Mach. Co.*, 383 F.Supp. 606, 612–14 (N.D.Iowa 1974), for example, the court refused to preclude an award of consequential damages in a negligence action where the contractual language limiting defendant's liability for consequential damages expressly referred to damages arising "under this contract." The court nevertheless noted its approval of opinions enforcing, in both negligence and warranty actions, consequential damages exclusions similar to the clause in Lake Shore's quotation containing the "in no event" language. *Id.* at 612.

In *Wellmore Constr. Corp. v. Powell Constr. Co.*, 600 F.Supp. 1042 (W.D.Va. 1984), this court also refused to apply a consequential damages exclusion clause to plaintiff's negligence claim based on a finding that the language of the exclusion applied to warranty only. The court's analysis of the clause was as follows:

In the sentence following the one which states 'the seller will not be responsible for nor liable in any way for consequential damages or contingent liability,' the following words appear. 'It shall not apply to machinery, materials or parts not manufactured by the seller, or to machinery or parts which shall have been repaired or altered other than by the seller, ...' Therefore, the language itself shows that the disclaimer points to warranty only and not to negligence.

*Id.* at 1047. The court also pointed out that "contingent and consequential dam-

ages are not generally associated with the law of negligence. They are terms applicable to and used in relation to the law of warranty and the U.C.C." *Id.* The fact that the subject clause in the present case was stated in no such limited context and included the term "special damages" distinguishes it from the one at issue in *Wellmore;* the "in no event" language was unequivocal and the "special damages" term placed the damage limitation in the negligence context. *See Beard & Son v. Ministrelli Constr. Co.,* 372 Mich. 364, 126 N.W.2d 695 (1964) (loss of profits were recoverable as special damages in tort action).

In light of the authority above, this court concluded that a Michigan court, if faced with the issue, would give effect to the damage limitation clause in the parties' purchase agreement in a negligence action, as well as a breach of contract or warranty action. The court therefore granted defendant's motion for partial summary judgment denying plaintiffs recovery for consequential and special damages. The motion was granted in the appropriate order dated May 13, 1986.