**ISLAND CREEK COAL COMPANY;**
**Garden Creek Pocahontas**
**Company, Plaintiffs–Appellants,**

v.

**LAKE SHORE, INC.,**
**Defendant–Appellee.**

No. 86–1172.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1987.

Decided Oct. 27, 1987.

---

Richard Cullen, John Martin Oakey, Jr. (Mary M.H. Priddy, McGuire, Woods & Battle, Ernest C. Vaughan, Jr., John K. Messersmith, IV, Randolph, Boyd, Cherry and Vaughan, Richmond, Va., on brief), for plaintiffs-appellants.

Michael Francis Urbanski, John L. Walker, Jr. (Woods, Rogers & Hazelgrove, Roanoke, Va., Larry B. Kirksey, Woodward, Miles & Flannagan, Bristol, Va., on brief), for defendant-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge.

In this diversity action, the plaintiffs, operators of coal mines, have sued the defendant, a manufacturer of mining machinery, to recover direct property damages, and consequential damages resulting from the breakdown of machinery purchased by the plaintiffs of the defendant. They ground their action on breach of warranty and on negligence. In its answer to the plaintiffs' complaint, the defendant pled, among other defenses, immunity from liability for consequential damages under an express exclusion of such recovery. On

April 23, 1986, about a month before trial of the action was scheduled, the defendant moved for a partial summary judgment declaring valid and enforceable the contract provision denying the right to recover consequential damages in the action. This motion was premised on the last sentence in Paragraph 10 of the "Terms and Conditions" which was a part of the defendant's "Quotation" on the basis of which plaintiffs had made their purchases of the machinery which is the subject of this action. This paragraph is one of ten paragraphs included in such "Terms and Conditions." The full paragraph is as follows:

*The rights and obligations of the Seller and Buyer under any order placed pursuant hereto shall be governed by the laws of the State of Michigan.* This *quotation* is subject to change without notice and expires thirty (30) days from its date unless otherwise indicated or renewed. No waiver, modification or addition to any of the provisions on the face or reverse side hereof shall be binding unless made in writing by Seller. *In no event shall any claim for consequential or special damages be made by either party.* (Emphasis added)

It is undisputed that this Paragraph was a part of the contract of the parties. It was also agreed by the parties that, under Paragraph 10 of the "Terms and Conditions," the law of Michigan was controlling in the construction of this contract, and that, under Michigan law, the parties to a contract "may limit or exclude consequential damages." [1] The defendant's motion for a partial summary judgment against the recovery herein of consequential damages sought a judicial determination that under the paragraph thus quoted any right to recover such damages was precluded. The district court granted the motion for sum-

mary judgment on June 16, 1986 in a carefully developed opinion.

In the meantime the plaintiffs, in November, 1985, had moved to amend their complaint to allege a separate negligence claim against the defendant for after-sale negligence by failure to warn plaintiffs of a defect in the machinery discovered by the defendant after sale and to assert a claim for punitive damages. The defendant resisted the motion as "untimely and is contrary to the interests of justice." The district court, in an order dated January 29, 1986, denied plaintiffs' motion to amend.

After the district court granted the defendant's motion for a partial summary judgment eliminating plaintiffs' right to recover consequential damages and the denial of plaintiffs' motion to amend, 636 F.Supp. 285, the only issue left for resolution was the claim of plaintiffs for direct property damages. In this posture of the case the parties entered into a compromise settlement disposing of plaintiffs' claim for direct property damages but reserving the right of the plaintiffs to appeal the grant by the district court of the partial summary judgment and the denial of plaintiffs' motion to amend the complaint. The plaintiffs have appealed both the grant of partial summary judgment and the denial of its motion to amend. These rulings of the district judge present the issues on appeal. We affirm the grant of partial summary judgment but reverse the denial of plaintiffs' motion to amend.

I.

We first address the plaintiffs' objections to the grant of partial summary judgment sustaining defendant's claim that Paragraph 10 of the applicable "Terms and Con-

---

1. The district court found that "a federal court exercising diversity jurisdiction must apply the conflict of laws rules of the forum state," *White v. American Motors Sales Corp.,* 550 F.Supp. 1287, 1289 (W.D.Va.1982), *aff'd.,* 714 F.2d 135 (1983), and that under section 8.1–105, Va.Code, which establishes the proper application to be given the parties' own choice of forum provides that the parties choice of law controls in the courts of Virginia "provided that the transaction bears a reasonable relationship to the state cho-

sen." It also found that the transaction in which they have been engaged herein bore such a relationship to the State of Virginia. The parties do not dispute this conclusion of the district judge. We must accordingly look to the law of Michigan in construing Paragraph 10 herein, recognizing that contractual provisions of this contract limiting the recovery of consequential damages is valid under the laws of Michigan. *See* Mich.Comp.Laws Ann. § 440.-2719.

ditions" bars any right of plaintiffs to recover consequential damages in this case. The controversy between the parties relates to the construction to be given the last sentence of such Paragraph: "In no event shall any claim for consequential or special damages be made by either party."

■ Under the law of Michigan, courts do not write contracts but construe a contract in the light of the language of the parties. Only if the language of the contract is ambiguous is there room for construction by the courts, under the Michigan rule. *DeVries v. Brydges,* 57 Mich.App. 36, 225 N.W.2d 195, 198 (1974). The plaintiffs contend that, despite the clarity of its language, the contractual provision barring recovery of consequential damages in Paragraph 10 is ambiguous and is subject to construction. Following this line of reasoning, the plaintiffs urge that Paragraph 10 of the "Terms and Conditions" must be read along with the other paragraphs in these "Terms and Conditions" and should be construed in conformity with what they declare to be the evident purpose of the "Terms and Conditions" taken as a whole. This purpose, in their view, is that all the "Terms and Conditions" relate solely to "price and delivery terms" and that the simple, clear-cut language in Paragraph 10, though stated in absolute terms, is to be restricted in its application to "price and delivery terms." Specifically, it contends Paragraph 10 does not cover claims for breach of warranty or negligence. And, they reason that Paragraph 2 of the "Terms and Conditions," which does expressly proscribe recovery of consequential damages for breach of "price and delivery terms" in the contract and which must be read in construing the language of Paragraph 10, demonstrates that the words "[i]n any event" in Paragraph 10 had reference only to claims arising out of breach of "prices and delivery terms" and could not have applied to claims for liability for breach of warranty or for negligence. In essence, the plaintiffs' argument would give no effect whatsoever to the language in Paragraph 10 proscribing the recovery of consequential damages and would find

the language unnecessary and nugatory. We are unable to follow this argument.

The argument of the plaintiffs is contrary to that universal rule of contract law that, in construing language in a contract, "an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless...." *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983); *Union Inv. Co. v. Fidelity & Deposit Co. of Ind.,* 549 F.2d 1107, 1110 (6th Cir.1977). In *Union Investment,* the court, citing in support the Michigan case of *Vary v. Shea,* 36 Mich. 388, 398 (1877), stated the rule thus: "A contract will not be construed so as to reject any words as surplusage if they can reasonably be given meaning." The same idea was recently phrased in a Michigan case in these words: "Furthermore, contractual provisions must be reasonably construed so as to make none nugatory and the promises contained therein illusory." *International Union (UAW) v. Roblin Industries,* 561 F.Supp. 288, 298 (W.D.Mich. 1983). In keeping with this rule of construction, the court in *Cordovan Associates, Inc. v. Dayton Rubber Company,* 290 F.2d 858, 861 (6th Cir.1961), put it that, "Where a contract is susceptible to different interpretations, the court will adopt the one which will give it validity, if it is reasonable, rather than one which renders it illusory." The argument of the plaintiffs would stand this rule of contractual construction on its head. They would take language which is as clear as words can make it, find it is ambiguous, and then completely emasculate that language of any meaning whatsoever.

In our opinion, Paragraphs 2 and 10 are not contradictory or inconsistent, both can be readily harmonized and may and should be given a reasonable construction under which neither will be rendered meaningless. Paragraph 2, as we have said, relates throughout the record, strictly to damages resulting from "delay in delivery or manufacture," whereas Paragraph 10 was intended to bar the right to recover "consequential or special damages" under any other circumstances, whatever those cir-

cumstances might be. The phraseology of Paragraph 10 seems to us to make this interpretation not merely reasonable but conclusive. We adopt this construction of Paragraph 10 and affirm the application of this construction of the paragraph by the district court in its order granting summary judgment.

The plaintiffs posited, even admitting *arguendo*, that Paragraph 10 might be held to bar recovery of consequential damages for breach of warranty or contract claims it could not be construed to bar claims of negligence. There is no reason, however, why the parties cannot limit the recovery of consequential or special damages in negligence claims as well as in warranty claims and we have been cited to no Michigan state authority in favor of a distinction between warranty claims and claims in negligence in this regard. The Court in *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.*, 358 F.Supp. 449, 465 (E.D.Mich.1972), *aff'd.*, 509 F.2d 1043 (6th Cir.1975), which is a Michigan case, held that the limitation on liability applied equally to negligence and warranty claims. The limitations of liability in *U.S. Fibres* was no clearer or broader than the language in Paragraph 10. *U.S. Fibres'* limitation language was:

> The Company shall not be liable for proximate, incidental, consequential or other damages, including, but not limited to erecting expenses and damages for loss of production or injury to person or property.

The plaintiffs, however, argue that *Challenge Machinery v. Mattison Mach. Works*, 138 Mich.App. 15, 359 N.W.2d 232 (1984), requires us to hold that the limitation language in Paragraph 10 does, even if applicable to breach of warranty claims, not apply to a separate and independent tort claim for the recovery of consequential damages. We do not agree. The Court in *Challenge* concluded that the limitation clause in the seller's offer was cancelled by conflicting provisions in the buyer's acceptance. Thus, there was no basis in *Challenge* to dismiss either the warranty claims or the tort claim for "negligent installation of the surface grinder, separate from its breach of warranty claims." After this

holding, there was no contractual provision limiting liability for consequential damages in any part of the case, and that case is no authority for a distinction between negligence and contract claims in a limitation of liability claim under the law of Michigan, as we read it.

We, therefore, affirm the district court's grant of summary judgment against the recovery of damages by the plaintiffs for consequential damages, on the record before the district court at the time.

## II.

The plaintiffs have raised a second issue which they contend requires reversal. Some four or five months before trial was scheduled to begin, the plaintiffs moved for leave to amend their complaint by stating another separate ground for recovery. In this new ground, the plaintiffs alleged the defendant discovered after the sale and delivery of the machinery to the plaintiffs a serious and dangerous defect in the machinery and failed to warn the plaintiffs, thereby causing the loss for which the plaintiffs seek recovery. The plaintiffs averred that they had only acquired knowledge of the prior discovery by the defendant of a defect in the machinery on July 17, 1985, and had filed with reasonable promptness their motion to amend, after some study of the situation in November, 1985. They sought both actual and punitive damages under the proposed amendment.

The defendant resisted the motion to amend and the district court sustained its objections. In its denial, the district court referred to the fact that the case had been pending for three and a half years during which time considerable time of the parties and the court had been spent in "defining plaintiffs' claim and exploring the defenses thereto." It reasoned that the allowance of the amendment would "completely change the issues in this case both as to the evidence and law" and would require "additional discovery and probably additional expert witnesses." The district court said, also, that the amendment could necessitate the "possible addition of coun-

sel due to punitive damage claim" and a "probable summary judgment motion on the punitive damage issue." Weighing all these considerations, the district court concluded that "justice [would not be] served by amending the suit at this late date because of undue delay in its disposition and undue prejudice to the defendant." The plaintiffs appeal this denial of their motion to amend.

■ Following *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), we have repeatedly held that leave to amend under Fed.R.Civ.P. 15(a) " 'shall be freely given when justice so requires' " and that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits," and that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive ... the leave ... should" be " 'freely given.' " *Smith v. Town of Clarkton, N.C.,* 682 F.2d 1055, 1059 (4th Cir.1982); *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986), And, while the trial court is given discretion to deny amendment, that discretion is limited by the interpretation given Rule 15(a) in *Foman,* "and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits." Thus, in exercising its discretion in the matter the Court should focus "on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants." *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980). It has been specifically held in line with this language that mere delay in moving to amend is "not sufficient reason to deny leave to amend," it is only when "[t]he delay [i]s accompanied by prejudice, bad faith, or futility." *Johnson v. Oroweat Foods Co., supra,* 785 F.2d at 509–10. While, as we have said, the determination to grant or deny the proposed amendment is within the discretion of the district court, guided by the spirit of the Federal Rules generally, and Rule 15(a), that discretion may not be exercised to deny the amendment arbitrarily or in disregard to the principles established for determining when the amendment is to be "freely granted" and, to permit proper review, the district court should spell out the reasons for such denial unless perfectly clear on the face of the many papers and responses thereto that the amendment is not to be allowed. *Rhodes v. Amarillo Hospital District,* 654 F.2d 1148, 1153 (5th Cir.1981).

■ We have already stated the reasons assigned by the district court for the denial of the motion to amend in this case. The first reason assigned was the long pendency of the suit (3½ years) during which discovery had been had and the issues had been thereby defined. It is true that the delay has been long but there was a reasonable justification for delay on the part of the plaintiffs. It was only in July, 1985 that the plaintiffs assert they acquired knowledge of the facts on which this new count rests. The district court accepted the truthfulness of this allegation. While the plaintiffs delayed for three months after this knowledge to file their motion to amend, such delay did not appear inordinate or excessive in view of the fact that the facts as first brought to plaintiffs' attention were drawn from the depositions of defendant's witness first taken in July, 1985. The plaintiffs were entitled to a reasonable time to investigate through other sources the information they had secured from the deposition of defendant's witnesses. Certainly, there was no showing of purposeful dilatoriness or bad faith by the plaintiffs in the short delay in filing their motion to amend after they became apprised of the possible claim. Nor can the defendant have suffered any material prejudice as a result of this short delay.

The defendant does argue, and the district court seems to have accepted the argument, that the addition of the new count would require new discovery and inquiry into new issues. The district court suggests that this establishes that the granting of the motion would be prejudicial to the defendant and to the efficient disposition of the cause. We would be more persuaded by this conclusion had the plaintiffs

been guilty of some dilatoriness which impeded the earlier conclusion of the case. There is no suggestion of this in the record. Actually, whatever the reason for the delay in the trial of this suit, it is obvious that this case proceeded at a desultory pace, and there is nothing in the record to lay the dilatoriness to the plaintiffs. Though the action was filed in 1982, it was not until July 17, 1985 (some three years later and but six months before the plaintiffs filed their motion to amend) that the first deposition was taken in this case. The last deposition was not taken until May, 1986, about six months after the plaintiffs had filed their motion to amend. Actually, no order fixing limits for discovery was ever entered. And, it was only as a result of this discovery begun after the case had been pending approximately three years, that the basis for the proposed count was discovered by the plaintiffs.

The defendant also alleges that it will be prejudiced by the granting of the motion to amend since the motion presented a totally new claim calling for additional discovery and probably additional expert witnesses. This claim was accepted by the district court as a reason for denial of the motion. The facts on which the count which the plaintiffs sought to add to the complaint by their motion to amend was well known to the defendant. Its experts had extensively investigated and studied those facts. These experts had testified about such facts in their depositions taken in July, 1985. The motion did not, therefore, take the defendant by surprise or require it to investigate a claim of which it was not already cognizant. In fact, the defendant's experts testified in their depositions why they thought any claim such as the plaintiffs proposed to assert could not be sustained. On the face of this record, the defendant is hardly in a position to argue that the granting of the amendment would be prejudicial to it in forcing it to investigate and prepare to defend a claim of negligence which it was not in a position to defend. This contention of the defendant is further undermined by the fact that the defendant argued that the allowance of the amendment would have been futile. The

defendant found futility of the proposed amendment in its argument that the plaintiffs had offered "no evidence that [the defendant] had been grossly negligent or [had] acted with callous disregard for [the plaintiffs'] rights." This matter is not before us after judgment granted on motion for summary judgment or for a directed verdict. To sustain their right to amend they do not have to prove all the elements of their proposed count; it is sufficient that they demonstrate that there is some plausible basis in the record for their claim. The depositions of the defendants own experts are sufficient for this limited purpose.

The defendant complains, too, that it will be prejudiced if this amendment is allowed because the plaintiffs will seek to introduce the verdict in the other case in which the alleged defect was exposed. We, however, perceive no problem in this regard. The plaintiffs disclaim any purpose of introducing into the record the verdict in the other case and, if they did we are confident the district judge would find such evidence inadmissible.

■ We have up to this time been examining the objections assigned by the district judge to the allowance of the proposed amendment. We have not, though, examined the ruling under the rubric of the "ends of justice." *Smith, supra.* There seems no question that, if the defendant discovered that the machine it had sold to the plaintiffs was not safe, it had a duty to notify the plaintiffs and a failure to do so would be actionable negligence. *See Large v. Bucyrus–Erie Co.,* 707 F.2d 94, 99 (4th Cir.1983), (Winter, Chief Judge, *concurring and dissenting*); *Smith v. FMC Corp.,* 754 F.2d 873, 877 (10th Cir.1985) ("a manufacturer has a responsibility to warn of a defective product at any time after it is manufactured and sold if the manufacturer becomes aware of the defect.") That is plaintiffs' cause of action which they seek to assert under the proposed amendment and they should be given an opportunity to prove such a claim if they can. The decision of the district court denies them that right in this action. However, should

the plaintiffs seek in a subsequent independent action to assert such a claim, they would likely be confronted with the defense of *res judicata,* based on their failure to raise such claim in this case. In fact, the plaintiffs assert that this is precisely what has happened. After the denial of their motion to amend in this case, the plaintiffs filed an independent action on the disallowed claim and were confronted by a plea of *res judicata* by the defendant. Whether the defense will be upheld is, of course, problematic; but if the plea is sustained, the action of the district court in denying the motion to amend herein would in effect preclude the plaintiffs from ever having a hearing on this claim. That is not satisfying the ends of justice.

In summary, we think this is one of those rare cases in which a refusal by the district judge to grant an amendment represents an abuse of discretion. We are not persuaded that the defendant will be unfairly prejudiced by the amendment nor will court administration be unduly delayed. On the other hand, to sustain the refusal could well mean that the plaintiffs would be denied the opportunity to a hearing on the merits of their claim, which they brought before the court with reasonable promptness after the discovery of the facts supporting their claim, facts which had been known to the defendant for a considerable length of time.

Our conclusion on this appeal, therefore, is that the district court's ruling on the first issue is affirmed, but its denial of plaintiffs' motion for leave to file an amended complaint is reversed.

### AFFIRMED IN PART and REVERSED IN PART.

HAYNSWORTH, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in Judge Russell's opinion insofar as it deals with the denial of the plaintiff's motion to amend its complaint. I dissent from its affirmance of partial summary judgment for the defendant.

I do not think that the last sentence in Paragraph 10 is so clearly applicable to a breach of warranty claim as to place it beyond construction by the factfinder.

The only contractual provisions before us are the "Terms and Conditions" printed upon the seller's price quotation form. Those terms and conditions deal entirely with matters of price and delivery. There is no mention of warranties or potential liabilities for negligence. Since every other sentence in the ten paragraphs is concerned with price and delivery, I think it may reasonably be argued that the last sentence of Paragraph 10 is also exclusively concerned with such things. If the sentence may also be read as applicable to breach of warranty and negligence claims, its meaning is reasonably debatable and is to be determined by a factfinder, not by the court on a motion for partial summary judgment.

My reading of Paragraph 2 and the last sentence of Paragraph 10 is entirely harmonious. Each is fully operable in its own area.

Paragraph 2 provides that the seller shall not be liable for any delay in delivery resulting from a cause beyond its reasonable control. There is no reference to consequential damages; the seller is not to be liable for damages of any kind if there is delay for which it is not reasonably responsible.

I read the last sentence in Paragraph 10, on the other hand, as dealing with a delay in delivery for which the seller is responsible or with an unreasonable failure of the buyer to accept delivery. In those circumstances, the defaulting party is liable for direct damages but not for consequential damages.

The crucial sentence at the end of Paragraph 10 provides that neither party shall assert a claim for consequential damages against the other. In the context of deliv-

eries, that is a reasonable way to approach the prohibition of consequential damages, for the seller might conceivably make such a claim against the buyer if it unreasonably refused to accept delivery of specially manufactured machinery, or to pay for it. The language seems singularly inappropriate, however, if the focus of the parties was upon potential claims for negligent failure to warn of defects or for breach of warranty.

The construction given this sentence in the majority opinion may be a permissible one. I believe it is not the only permissible one. Its meaning should be for determination by the factfinder and not by the court on a motion for summary judgment.