ISLAND CREEK COAL COMPANY
and Garden Creek Pocahontas
Company, Plaintiffs,

v.

LAKE SHORE, INC., Defendant.

Civ. A. No. 82–0349–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Aug. 11, 1988.

Ernest C. Vaughan, Jr., Richard Cullen, Richmond, Va., for plaintiffs.

Larry B. Kirksey, Bristol, Va., Michael F. Urbanski, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This diversity suit is before the court on the defendant's motion to dismiss the plaintiffs' amended complaint. The plaintiffs seek consequential and punitive damages resulting from the defendant's alleged negligent or intentional failure to warn of a defect in a mining shaft it sold to plaintiffs. For the reasons stated below, the court concludes that plaintiffs cannot recover compensatory or punitive damages and accordingly grants summary judgment in favor of the defendant.

## Facts

On September 9, 1982, the plaintiffs brought suit against the defendant for negligence and breach of warranty. The defendant had sold the plaintiffs a sheave shaft used in a mine coal hoisting mechanism that failed earlier that year. During preparations for trial, discovery revealed that a similar shaft designed by the defendant and owned by a copper mining company failed almost a year previous to the plaintiff's shaft. In light of this information, the plaintiffs moved on November 6, 1985 to amend their complaint to add claims for failure to warn of a known defect and for punitive damages. This court denied leave to amend believing that it would be untimely and prejudicial. The defendant then moved for partial summary judgment contending that the plaintiffs' claim for lost profits was barred by a clause in the sales contract that excluded consequential and special damages. On May 13, 1986, this court granted the motion, and soon thereafter entered an opinion setting forth its reasons for the ruling. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 636 F.Supp. 285 (W.D.Va.1986). Following this ruling, the parties settled the plaintiffs' claim for property damages.

The plaintiffs subsequently appealed this court's denial of leave to amend and its entry of partial summary judgment. The Fourth Circuit Court of Appeals affirmed in part and reversed in part. It affirmed that the contract barred consequential and special damages but reversed the denial of plaintiffs' motion to amend. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir.1987). Accordingly, this court then allowed the plaintiffs to file their amended complaint. The complaint alleges that the defendant intentionally and callously withheld information of defects in the mining shaft and failed to warn the plaintiffs. It seeks consequential and punitive damages. The defendant has filed a motion to dismiss, the parties have presented their contentions at oral argument, and time is ripe for the court to rule on the defendant's motion.

## Application of the Contractual Limitation of Damages to the Plaintiffs' Amended Complaint

■ The gravamen of the plaintiffs' amended complaint is that the defendant learned of a problem in the shaft it sold plaintiffs yet failed to warn them of this danger, thereby resulting in great loss to the plaintiffs' when their shaft subsequently failed. The defendant's chief defense is that the parties have settled direct property damages and the sales contract excludes consequential or special damages. Although the plaintiffs' complaint and briefs characterize this alleged failure to warn as an intentional and wanton concealment, plaintiffs' counsel asserted at oral argument that the complaint alleges both an intentional and a negligent failure to warn. Accordingly, the court will address the issues in both contexts.

The obligation to warn is a recognized duty in product liability law. "[T]wo distinct types of duty to warn have evolved: a duty to warn when a product is sold—the point-of sale duty—and a duty to warn thereafter, if and when a danger is discovered—the post-sale duty, often referred to as 'the continuing duty to warn.'" Schwartz, *The Post–Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine*, 58 N.Y.U.L.Rev. 892, 893 (1983) (footnotes deleted). The Fourth Circuit recognized this duty when it allowed the amended complaint, stating that "[t]here seems no question that, if the defendant discovered that the machine it had sold to the plaintiffs was not safe, it had a duty to notify the plaintiffs and a failure to do so would be actionable negligence." *Island Creek*, 832 F.2d at 280. Because the sales contract specifies that Michigan law applies, the court should further note that Michigan also recognizes this post-sale duty. Indeed, one of the seminal cases in this area of the law is from Michigan. *See Comstock v. General Motors Corp.*, 358 Mich. 163, 99 N.W.2d 627 (1959) (car manufacturer had duty to warn purchasers of defective brakes that it discovered after sale). Unfortunately, the parties have not cited, nor has the court

discovered, any Michigan cases that deal with the specific issue at hand.

To escape the contractual stipulation against consequential and special damages, the plaintiffs argue that the duty to warn is independent from any contractual obligation. They insist that the focus should be on the defendant's post-sale tortious behavior, not the defective product. Although the plaintiffs did not cite this case, perhaps the most eloquent rendition of their argument can be found in *Miller Industries v. Caterpillar Tractor Co.,* 733 F.2d 813 (11th Cir.1984). In this maritime case, the plaintiffs' commercial fishing expedition was delayed by a faulty boat engine manufactured by Caterpillar. Although the plaintiffs suffered great economic loss, the engine's warranty limited recovery to repair costs. *Id.* at 815–17. In discussing the plaintiffs' claim that Caterpillar failed to warn of defects it discovered after sale, the court stated that:

> [w]hatever the merits of adopting a rule that views defects in a product as part of the parties' bargain and thus within the law of sales, it is much less tenable to presume that the buyer has bargained away the manufacturer's obligation to warn of defects that later come to the manufacturer's attention. A duty to warn of a product's defects of which the seller becomes aware goes not to the quality of the product that the buyer expects from the bargain, but to the type of conduct which tort law governs as a matter of social and public policy.... To hold otherwise would impermissibly allow a manufacturer who is aware that it has a defective product on the market to hide behind its warranty while the buyer unknowingly uses it.

*Id.* at 818 (citations deleted). The Eleventh Circuit then upheld the trial court's ruling that a negligent failure to warn was actionable under maritime law even though no physical damage had occurred. *Id.* It is important to note, however, that the court stated that its holding was dependent on the fact that the warranty did not "expressly disclaim negligence." *Id.; see also id.* at 817.

Moving out of the maritime field, the defendant relies heavily on two cases. In the first of these, a Japan Air Lines ("JAL") DC–8 crashed during takeoff, killing most of the passengers aboard. An insurer of JAL brought suit against McDonnell Douglas, the plane's manufacturer, seeking recovery for the loss of the plane and indemnity for payments it made on passenger claims. *Tokio Marine and Fire Insurance Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 938 (2nd Cir.1980). When JAL bought the plane, however, it negotiated a warranty with McDonnell Douglas that broadly waived all liabilities. In discussing the property damage issue, the Second Circuit held that the warranty precluded liability under a strict liability theory. *Id.* at 939–40. The court then addressed the plaintiffs' failure to warn argument:

> Tokio Marine's contentions that it might recover for McDonnell's negligent failure to warn or its negligent misrepresentations also were properly rejected by the district judge. The disclaimer clause was broadly inclusive, and there is no merit to Tokio Marine's argument that the parties intended to compartmentalize McDonnell's negligence under pre-delivery and post-delivery labels. JAL agreed to waive "all liabilities ... arising by law or otherwise ... whether or not caused by seller's negligence." This waiver is broad enough to include a claim for post-delivery failure to warn.

*Id.* at 940 (omissions in original). This case lends strong support to the defendant's position. Moreover, the contract clause in *Tokio Marine* was a broad exculpatory clause while the clause at hand merely limits the type of recoverable damages. Accordingly, any policy considerations against enforcing the limitations clause are weaker in the present case than in *Tokio Marine.*

In the second case, the trial court enforced an exculpatory clause that stated, among other things, that the purchaser of an aircraft waived "any obligation or liability of [the manufacturer] arising from tort." *S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Boeing*

Co. [1975–1977 Transfer Binder] Prod.Liab. Rep. (CCH) § 8028 (W.D.Wash.1977), *aff'd,* 641 F.2d 746 (9th Cir.1981). The court expressly extended this waiver to a post-delivery failure to warn claim. The court concluded that the clause was "clear, unambiguous, and make[s] no exceptions for either time difference or degree of negligence." *Id.* Upon appeal, the Ninth Circuit affirmed the trial court's ruling. *See* 641 F.2d at 750.

As can be expected, the plaintiffs' attempt to distinguish these cases. They assert that in neither case was it ever alleged or proven that:

the defendant manufacturers had any greater knowledge of their products' defects *after* sale and delivery than they did before. Both had allowed into service planes that did not meet the applicable safety standards, but there was never a triggering event to call to their attention their negligence and the resulting danger. In our case, it is not only alleged that there was such a triggering event, it is also alleged that defendant Lake Shore purposely did not warn Island Creek of the sheave shaft's defect once it had knowledge of it.

Plaintiffs' brief at 13 (emphasis in original). It appears that the plaintiffs' contend that *Varig* and *Tokio Marine* involved a point-of-sale failure to warn instead of a post-sale failure. "[A] time-of-sale duty to warn of risks inherent in the use of a product arises whenever the product seller knew or should have known of the risks of harm, and the failure to provide an adequate warning renders the product unreasonably dangerous." Allee, *Post–Sale Obligations of Product Manufacturers,* 12 Fordham Urb.L.Rev. 625, 628–29 (1984) (footnotes omitted). Some jurisdictions even eliminate the "knew or should have known" requirement. *Id.* at 629. In contrast, a post-sale duty to warn arises when:

(1) a danger that was knowable but not disclosed at the time of sale or manufacture is discovered at a later time; (2) a danger inherent in the foreseeable uses of the product that was unknown and unknowable at the time of sale becomes known at a later time; (3) a danger re-

sulting from an unforeseeable use of the product becomes known because the use is discovered after the product is sold; or (4) a risk reduction measure, such as a more effective safety device, is developed because of a post-sale improvement in the state of the art.

*Id.* at 630 (footnotes omitted). The "triggering event" distinction proposed by the plaintiffs is nothing more than the after-discovered danger that is essential to the nature of a post-sale duty to warn claim. By claiming that the airplane manufacturers in *Varig* and *Tokio Marine* had no "greater knowledge of their products' defects *after* sale and delivery than they did before," the plaintiffs confuse a point-of-sale duty with an after-sale duty. If the manufacturers had no greater knowledge after sale than before, then they would have had no post-sale duty to warn. In contrast, if the airplanes had been defective at sale and the manufacturers knew or should have known of that danger, then the plaintiffs in those cases could have asserted a point-of-sale failure to warn. Although the opinion in *Tokio Marine* does not discuss when the manufacturer became aware of the defect, it does state that the exculpatory clause was "broad enough to include a claim for *post-delivery* failure to warn." *Tokio Marine,* 617 F.2d at 940 (emphasis added). This court will not presume that the Second Circuit did not understand the distinctions between the two types of duties to warn. The same is true as to *Varig.* Moreover, despite the implications of the plaintiffs' argument, there is no reason to assume that an exculpatory clause that is applicable to a point-of-sale failure to warn would not be applicable to a post-sale failure claim. If anything, the moral implications are greater in the point-of-sale situation. From the very start, the manufacturer ignores his duty to warn of known defects. In the after-sale situation, he neglects his duty only from the point of received knowledge. For all these reasons, the plaintiffs' attempts to distinguish *Tokio Marine* and *Varig* must fail.

The Fourth Circuit's opinion in this case also lends support to the defendant's posi-

tion. At one point, the court stated that the limitation of damages clause "was intended to bar the right to recover 'consequential or special damages' under *any other* circumstances, whatever those circumstances might be." *Island Creek*, 832 F.2d at 277–78 (emphasis added). The court also rejected the plaintiffs' claim that the limitation did not apply to a "separate and independent tort claim for the recovery of consequential damages." *Id.* at 278. Although it probably had in mind a "negligent design" claim when it made that ruling, the court's language nevertheless aids the defendant.

The plaintiffs contend that if the Fourth Circuit believed that the limitations clause barred consequential damages for a post-sale duty to warn claim, then it would not have instructed this court to allow the amended complaint: the issue would have been moot. In support of their argument, the plaintiffs further note that the defendant mentioned *Varig* and *Tokio Marine* in response to questions at oral argument before the Fourth Circuit, and yet, those cases were not cited in that court's opinion. Nevertheless, this court feels that the Fourth Circuit's opinion should not be construed that broadly. The plaintiffs attempt to transform the Fourth Circuit's procedural ruling on the amended complaint into a substantive ruling on its merits. Although the Fourth Circuit knew the gravamen of the proposed complaint, it had not yet been filed. The complaint was not before that court. Moreover, the court stated that the plaintiffs "should be given an opportunity to prove such a claim *if* they can." *Island Creek*, 832 F.2d at 280 (emphasis added). Before they can prove their claim, it must withstand a motion to dismiss. The Fourth Circuit's opinion cannot be read to support the plaintiffs' position on this issue.

The plaintiffs briefly present another argument. They contend that even if the limitations clause was intended to cover negligent design and breach of warranty, the parties did not intend it to cover a post-sale failure to warn. They insist that the parties' intent in this regard should go to a jury. The court disagrees. The clause is not ambiguous, indeed, the Fourth Circuit held thus. *See id.* at 277.

For the aforementioned reasons, the court concludes that the limitations clause is applicable to the amended complaint. The court will now proceed to address the plaintiffs' claim that it is void as to public policy.

### Public Policy Argument

■ The plaintiffs contend that a contractual limitation on damages for intentional misconduct is void as to public policy. Before addressing this issue, the court will first note that such an argument obviously has no application to the plaintiffs' *negligent* failure to warn claim. Accordingly, the limitations clause is effective to bar consequential and special damages for the alleged negligence. As to the *intentional* failure to warn claim, the question is close. Nevertheless, the court concludes that the clause is not void as to public policy even for an intentional failure to warn.

The court has been unable to find any cases directly on point. According to the contract, Michigan law applies to the construction of the contract. The Michigan Supreme Court has stated that "[g]enerally a party may contract against liability for harm caused by his negligence in performance of a contractual duty, but he may not do so with regard to his gross negligence." *Klann v. Hess Cartage Co.*, 50 Mich.App. 703, 706, 214 N.W.2d 63, 65 (1973). In like vein, it is against Michigan public policy to insure oneself against one's intentionally tortious conduct. *See Vigilant Insurance Co. v. Kambly*, 114 Mich. App. 683, 687, 319 N.W.2d 382, 385 (1982).

In support of their position, the plaintiffs cite a New York state case and the Second Restatement of Contracts. Although the Restatement affirms that a contract term that exempts a party from tort liability for intentional or reckless harm is unenforceable on grounds of public policy, it also states that:

(3) A term exempting a seller of a product from his special tort liability for physical harm to a user or consumer is unenforceable on grounds of public poli-

cy unless the term is fairly bargained for and is consistent with the policy underlying that liability.

Restatement (Second) of Contracts § 195(3) (1981). Obviously, the general rule is not absolute. Moreover, the New York case is unpersuasive.

The court feels that a question of this nature must be decided on a case by case basis. The real issue is whether the contract provision is unconscionable and that inquiry is naturally fact determinative. Although the general thrust of the Michigan cases is clear, most have concerned consumers or instances of unequal bargaining power. Moreover, other courts have upheld the validity of such clauses in the face of intentional misconduct when the clause "is not a matter of interest to the public or the State but merely an agreement between persons relating entirely to their private affairs." *Knouse Foods Cooperative, Inc. v. Burns International Security Services, Inc.*, 519 F.Supp. 867, 869 (E.D.Pa. 1981) (quoting *Boyd v. Smith*, 372 Pa. 306, 309–10, 94 A.2d 44, 46 (1953)).

The present case involves two large sophisticated corporations, well represented by counsel. There is no indication that one party had unequal bargaining power. In addition, the contract concerns private business affairs, not a matter of interest to the public. No consumers, insurers, or common carriers are involved. Although the plaintiffs allege that the defect potentially endangered life, no one was actually injured when the shaft failed. Moreover, the contract clause does not totally exclude liability, it merely limits the damages. Finally, the very nature of a post-sale duty to warn claim lends support to the defendant's position. The plaintiffs contend that the defendant failed to warn them after it obtained actual knowledge of the problem. The claim is a charge of omission, not commission. It is possible that once a manufacturer receives knowledge of a defect it might "forget" or somehow negligently fail to make a warning. To attempt to distinguish between such a negligent omission and a conscious or intentional omission, however, would be almost impossible. To allow the damage limitation to stand as to a negligent failure but not an intentional one would practically emasculate the effect of the limitation as to the negligent failure.

The court emphasizes that its decision is peculiar to the facts of this case. No attempt is made to rule broadly on this issue. In many other intentional failure to warn cases, the result might well be different. Nevertheless, the court concludes that in this instance the limitation of damages clause is not void as to public policy.

### Punitive Damages

The defendant makes two arguments concerning punitive damages. It contends that its alleged misconduct does not justify such damages and further argues that if this court excludes consequential damages then it cannot award punitive damages. Although the first argument involves contested facts and cannot be addressed on a motion to dismiss, the second contention has merit.

As noted, the parties have settled direct property damages and this court has enforced the contract so as to preclude consequential and special damages. The only possible remaining damages are punitive damages. A problem arises, however, because:

> [m]any courts have taken the view that the trier of fact must find and award actual or compensatory damages before an award of punitive damages may be made. Other cases support the view that the rule that there must be a showing of actual damages before an award of punitive damages may be made is satisfied if it is established that the plaintiff received injuries entitling him to compensation, even though no finding or award of actual or compensatory damages is made.

22 Am.Jur.2d *Damages* § 743 (1988) (footnotes deleted). Virginia appears to be among the jurisdictions that require a finding and award of compensatory damages while Michigan evidently has not decided the issue.

At the outset, the defendant's argument invokes an interesting conflict of laws

question. It assumes without argument that Virginia law controls even though the court has heretofore applied pertinent Michigan law. Under Virginia law, the parties may stipulate that the law of another jurisdiction will govern. *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F.Supp. 1140, 1144 (W.D.Va.1979). In this instance, the Fourth Circuit upheld the parties' stipulation of Michigan law and applied that law in enforcing the limitations clause to exclude several different claims. This court has done the same concerning the failure to warn claims.

 Nevertheless, "questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (*lex loci*), while questions of procedure and remedy are governed by the law of the place where the action is brought (*lex fori*)." *Frye v. Commonwealth*, 231 Va. 370, 376, 345 S.E. 2d 267, 272 (1986). The court does not attempt to discern where the place of wrong would be in a failure to warn case. This difficulty can be avoided because "the law of *lex loci* does not deal with remedies." *Walters v. Rockwell International Corp.*, 559 F.Supp. 47, 49 (E.D.Va.1983). The court in *Walters* concluded that "while the right to recovery and the limits on recovery are substantive law, the distribution of the recovery is remedial law." *Id.* at 49–50. Although one could argue that the availability of punitive damages is a matter of substantive law because it concerns the limits of recovery, this court is convinced that it is more in the nature of a remedy.

The court holds to this position despite the parties' choice of Michigan law. When the Fourth Circuit and this court considered the consequential damages issue, it was in the context of interpreting the scope of an explicit contractual provision. The parties can contract for governing law in such a case. In contrast, the contract is silent as to punitive damages. The court accordingly cannot analyze the issue in the context of construing the scope of a contractual clause. Finally, even assuming that the stipulation of Michigan law is ap-

plicable, Michigan apparently has not addressed the issue. An exhaustive annotation of the question found at 40 A.L.R.4th 11, 22–36 (1985) does not cite any Michigan cases. Moreover, the court's own research has failed to reveal Michigan cases. Perhaps this omission can be explained by the fact that Michigan, like a few other states, awards exemplary damages not as punishment to the defendant but as compensation to the plaintiff for wrongs suffered. *See* 22 Am.Jur.2d *Damages* § 735 (1988). In any event, however, the effect is that no actual conflict exists. Virginia has one rule while Michigan's position is unknown. For this and the aforementioned reasons, the court feels that it should apply the law of the forum state, Virginia.

In Virginia, "an *award* of compensatory damages ... is an indispensable predicate for an award of punitive damages, except in actions for libel and slander." *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 159, 313 S.E.2d 384, 388 (1984) (emphasis added). In *Gasque*, the Virginia Supreme Court held that the purchasers of a defective automobile could not recover punitive damages because they sought only the recission of their sales contract, not compensatory damages. *Id.* In another recent case, the Supreme Court reversed a trial court's grant of punitive damages against a lender for violation of a lending statute because "neither compensatory damages nor nominal damages were awarded against [the lender]. Consequently, punitive damages could not be awarded." *Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 432, 337 S.E.2d 291, 297 (1985). In yet another case, the Supreme Court held that because "the evidence of fraud in the inducement was insufficient to take the case to the jury as to compensatory damages, there was, *a fortiori*, no basis for an award of punitive damages." *Watson v. Avon Street Business Center, Inc.*, 226 Va. 614, 619, 311 S.E.2d 795, 799 (1984). *See also Zedd v. Jenkins*, 194 Va. 704, 706–07, 74 S.E.2d 791, 793 (1953). The Fourth Circuit has also followed this path. *See Durham v. New Amsterdam Casualty Co.*, 208 F.2d 342, 345 (4th Cir.1953) ("Punitive damages can be allowed only where compensatory

**636**

damages have been awarded."); *Gay v. American Motorists Insurance Co.*, 714 F.2d 13, 16 (4th Cir.1983) (compensatory damages necessary predicate in Virginia for award of punitive damages).

■ The plaintiffs have barely responded to the defendant's arguments on punitive damages. The only possible support for their position is found in a case cited by the defendant, *O'Brien v. Snow*, 215 Va. 403, 210 S.E.2d 165 (1974). In *Snow*, the defendant admitted to property damage liability and the trial court granted summary judgment allowing recovery of the compensatory damages but denying punitive damages. The Supreme Court reversed, stating that "as the result of the defendant's *admission* of property damage *liability,* there has been a *finding* of compensatory damages which is a prerequisite to an award of punitive damages.... A defendant, when sued for compensatory and exemplary damages, may not escape liability for the latter by merely admitting the former." *Id.* at 405, 210 S.E.2d at 167 (emphasis added). In sharp contrast to *Snow,* however, the defendant in this case did not admit liability when it settled the property damages. The release in question, dated July 15, 1986, states in pertinent part that "[i]t is further understood that liability is denied by [the defendant and others] and that the aforementioned compromise settlement shall never be treated as an admission of liability at anytime or in any manner whatsoever." The court agrees with the defendant that the mere settlement of a claim, without an admission of liability, is not equivalent to a *finding* or *award* of compensatory damages. No one forced the plaintiffs to settle without obtaining an admission of liability. When the general rule is so clear, the court will not recognize an exception that is so easily distinguished from the case at hand. Because the issue of property damages was settled and consequential damages are barred, no possible award of compensatory damages exists to support an award of punitive damages.

### Conclusion

The damages limitation clause applies to the negligent and intentional failure to warn claims asserted in the plaintiffs' amended complaint. The limitation clause is not void as to public policy. Because no possibility of an award of compensatory damages exists, punitive damages are barred.

The defendant's motion to dismiss rests on Federal Rule of Civil Procedure 12(b)(6). Because the court considered the parties' settlement agreement in arriving at its ruling, which is a matter outside of the pleadings, in accordance with Rule 12(b) the court treats the defendant's motion as one for summary judgment under Rule 56. The court further considers the parties to have been given reasonable opportunity to present all pertinent material under Rule 56 and in accordance with Rule 12(b). The only outside document considered by the court was the settlement agreement and the plaintiffs had notice of the defendant's submission of this document, commented upon it, and also submitted related documents themselves.

### ORDER

In accordance with a Memorandum Opinion entered this date, the court grants summary judgment in favor of the defendant. Because the parties have submitted, and the court has considered, matters extraneous to the pleadings, the court has treated defendant's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss as one for summary judgment as required by Rule 12(b)(6).

Nothing further remaining to be done in this case, it is hereby stricken from the docket.